## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| SEAN FRAZEE, FELICIA COOK, AND DAVID LESHOCK, individually and on behalf of all others similarly situated, | Case No.: 25-cv-144 |
| | **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| FCA US LLC, a Delaware Limited Liability Company, | |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiffs Sean Frazee, Felicia Cook, and David Leshock file this lawsuit individually and on behalf of proposed Nationwide and statewide classes based on their personal experience and knowledge and based on the investigation of counsel:

## I.    INTRODUCTION

1.    The 2021–2023 Jeep Wrangler and Jeep Gladiator vehicles (the "Class Vehicles") manufactured and sold by FCA US LLC ("FCA" or "Defendant") have a defect that can cause the vehicle to catch fire, starting under the hood, even if the vehicle is off and the key removed ("Underhood Fire Defect.")  That is, the Class Vehicles can catch fire at any time, no matter where they might be: parked on the street, in the garage of an owners' home, being driven on a highway.

2.    Based on the investigation undertaken to date by the National Highway Transportation and Safety Administration ("NHTSA"), the Underhood Fire Defect is caused by a defect in the power steering pump electrical connector which can cause the vehicle fires.[1]

3.    The Underhood Fire Defect creates an unreasonable risk of accident, injury, death, or property damage if the vehicle catches fire while in operation or while the vehicle is parked at home, on the streets or near other buildings and

---

[1] *See* ODI Resume for NHTSA Investigation PE24024, https://static.nhtsa.gov/odi/inv/2024/INOA-PE24024-19581.pdf (last visited December 12, 2024).

structures, or in a parking lot. The Underhood Fire Defect threatens passengers, other drivers on the road, neighbors, owners of other cars parked near the Class Vehicles, and other bystanders.

4.     The NHTSA investigation has identified at least nine vehicles which have succumbed to the Underhood Fire Defect, one of which resulted in an injury.[2] NHTSA has determined that over 781,000 Jeep Wrangler and Gladiator vehicles may be subject to the Defect.[3]

5.     FCA also knew or should have known about the Underhood Fire Defect long before NHTSA opened its investigation of these years-old vehicles based on consumer complaints of underhood fires made to FCA, NHTSA, and elsewhere online.

6.     Facing the real threat posed by the Underhood Fire Defect, owners are left with unsafe Vehicles which many, if they are fortunate enough to have a choice, will opt not to use because of the risks.

7.     Because of FCA's breaches of implied warranties of merchantability and its failure to provide a remedy for the Underhood Fire Risk, owners and lessees of Class Vehicles have been harmed, suffering ascertainable losses in money and property. Had Plaintiffs and the putative class members known of the Underhood

---

[2] *Id.*

[3] *Id*.

Fire Risk, they would not have purchased or leased those vehicles or would have paid substantially less for them.

8.      Plaintiffs bring this action on behalf of themselves and other owners and leases of Class Vehicles to recover damages and a repair under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301–2312, and state laws of implied warranty and unjust enrichment.

## II.      JURISDICTION

9.      This Court has original jurisdiction over this lawsuit under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2) and (6), because Plaintiffs and Defendant are citizens of different states; there are more than 100 members of the Class and each Subclass (as defined herein); the aggregate amount in controversy exceeds $5 million, exclusive of attorneys' fees, interest, and costs; and class members reside across the United States. The citizenship of each party is described further below in the "Parties" section.

10.      This Court has personal jurisdiction over Defendant by virtue of its transactions and business conducted in this judicial district, including sale of Class Vehicles to a Plaintiff among other members of the proposed classes. Defendant has transacted and done business, and violated statutory and common law, in the State of Ohio and in this judicial district.

### III.   VENUE

11.   Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendant transacts substantial business in this district, including the sale of Class Vehicles such as to one of the Plaintiffs.

### IV.   PARTIES

**A.   Plaintiffs**

**1.   SEAN FRAZEE (OHIO)**

12.   Plaintiff and proposed class representative Sean Frazee ("Plaintiff" for purposes of this paragraph) is a resident and citizen of Portsmouth, Ohio. On or about December 1, 2022, Plaintiff purchased a new 2023 Jeep Wrangler from Mark Porter Chrysler Dodge Jeep Ram in Ohio. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use. As a result of FCA's uniform and pervasive marketing of the Class Vehicles, Plaintiff purchased his Class Vehicle with the primary expectation that it was a dependable and safe vehicle.  At no point did FCA itself or through its dealers disclose the Underhood Fire Defect to Plaintiff.  Despite undertaking regular service of the vehicle, Plaintiff is now concerned about driving his Class Vehicle or parking it near his home and other structures due to the dangers of the Underhood Fire Risk. Particularly during inclement weather, Plaintiff, a disabled veteran, faces an additional burden of the added walk to his Class Vehicle due to the Defect. Plaintiff would not have purchased the vehicle, or would have paid less for it, had

Plaintiff known about the Underhood Fire Defect.

### 2. FELICIA COOK (PENNSYLVANIA)

13.     Plaintiff and proposed class representative Felicia Cook ("Plaintiff" for purposes of this paragraph) is a resident and citizen of New Albany, Pennsylvania. On or about October 1, 2023, Plaintiff purchased a used 2021 Jeep Wrangler from Tunkhannock Auto Mart in Pennsylvania. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use. As a result of FCA's uniform and pervasive marketing of the Class Vehicles, Plaintiff purchased her Class Vehicle with the primary expectation that it was a dependable and safe vehicle.  At no point did FCA itself or through its dealers disclose the Underhood Fire Defect to Plaintiff.  Despite undertaking regular service of the vehicle, Plaintiff is now concerned about driving her Class Vehicle or parking it near her home and other structures due to the dangers of the Underhood Fire Risk.  However, due to concerns of her neighbors' safety, Plaintiff is unable to move her Class Vehicle any further from her home. Plaintiff would not have purchased the vehicle, or would have paid less for it, had Plaintiff known about the Underhood Fire Defect.

### 3. DAVID LESHOCK (MICHIGAN)

14.     Plaintiff and proposed class representative David Leshock ("Plaintiff" for purposes of this paragraph) is a resident and citizen of Grand Blanc, Michigan.

On or about October 1, 2020, Plaintiff purchased a new 2021 Jeep Wrangler from Al Serra Chrysler Dodge Jeep Ram in Michigan. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use. As a result of FCA's uniform and pervasive marketing of the Class Vehicles, Plaintiff purchased his Class Vehicle with the primary expectation that it was a dependable and safe vehicle.  At no point did FCA itself or through its dealers disclose the Underhood Fire Defect to Plaintiff. Despite undertaking regular service of the vehicle, Plaintiff is now concerned about driving his Class Vehicle or parking it near his home and other structures due to the dangers of the Underhood Fire Risk. Plaintiff can no longer utilize his home garage due to the Defect, causing further inconvenience. Plaintiff would not have purchased the vehicle, or would have paid less for it, had Plaintiff known about the Underhood Fire Defect.

**B.    Defendant**

15.    Defendant FCA US LLC ("FCA"), formerly known as Chrysler Group, is a Delaware limited liability company organized and existing under the laws of the State of Delaware, and is wholly owned by Stellantis N.V., a Dutch corporation headquartered in Amsterdam, Netherlands. FCA's principal place of business and headquarters is at 1000 Chrysler Drive, Auburn Hills, MI 48326.

16.    FCA is a motor vehicle manufacturer and a licensed distributor of several brands of vehicles, including its line of Jeep brand motor vehicles. FCA

engages in commerce by marketing, warranting, distributing and selling passenger vehicles, including the Class Vehicles.

## V.    FACTUAL ALLEGATIONS

### A.    FCA Marketed the Class Vehicles as Safe

17.    Throughout its marketing brochures for the Class Vehicles, FCA emphasizes the vehicles' safety, exhorting owners and lessees to "go with confidence", and promising the Class Vehicles provide "a mountain of safety and security", are "designed to help keep you safe and secure", and generally providing the "safety and security of a "Gladiator' or 'Wrangler", for example:



2021 Jeep Gladiator.[4]

---

[4] https://web.archive.org/web/20210225022514mp_/https://www.jeep.com/gladiator/safety-security.html (last visited December 12, 2024).



2022 Jeep Gladiator.[5]



2023 Jeep Gladiator.[6]

---

[5] https://web.archive.org/web/20220527063135mp_/https://www.jeep.com/gladiator/safety-security.html (last visited December 12, 2024).
[6] https://web.archive.org/web/20230319120356/https://www.jeep.com/gladiator/safety-security.html (last visited December 12, 2024).



2021 Jeep Wrangler.[7]



2022 Jeep Wrangler.[8]

---

[7] https://web.archive.org/web/20210126193632mp_/https://www.jeep.com/wrangler/safety-security.html (last visited December 12, 2024).
[8] https://web.archive.org/web/20220117214845mp_/https://www.jeep.com/wrangler/safety-



2023 Jeep Wrangler.[9]

**B.    The Underhood Fire Defect**

18.    On September 6, 2024, NHTSA opened Investigation No. PE24024 into the Underhood Fire Defect in an estimated 781,459 2021–2023 Jeep Wrangler and Gladiator vehicles.[10]

19.    NHTSA launched its investigation based on nine engine compartment fires in the Class Vehicles that are currently believed to originate

---

security.html (last visited December 12, 2024).

[9] https://web.archive.org/web/20221205190534mp_/https://www.jeep.com/wrangler/safety-security.html (last visited December 12, 2024).

[10]    *See* ODI Resume for NHTSA Investigation PE24024, https://static.nhtsa.gov/odi/inv/2024/INOA-PE24024-19581.pdf (last visited December 12, 2024).

from the power steering pump electric connector have caused at least one injury.[11]

20.    One of the notable features of this defect is that the majority of the fires occurred while the vehicle's ignition was off and, as NHTSA makes clear, "[a]n ignition 'OFF' vehicle fire can result in an increased risk of occupant injury, injury to persons outside the vehicle, and property damage, with little to no warning."[12]

21.    Alongside NHTSA's ongoing investigation,[13] Plaintiffs' counsel continues to monitor to true scope of the Underhood Fire Defect, including whether additional model years of FCA vehicles may also risk underhood fires.

22.    FCA knew or should have known about the Underhood Fire Defect well before NHTSA opened an investigation into the problem, as evidenced by consumer complaints lodged with FCA directly and with NHTSA and elsewhere online.

23.    Because the Underhood Fire Defect can lead to a vehicle fire at any time, even in recently sold vehicles, Plaintiffs believe that FCA received complaints related to the Defect as early as March 2021.

24.    All vehicle manufacturers, including FCA, are required by law to routinely monitor and analyze NHTSA complaints to determine whether vehicles

---

[11] *Id.*
[12] *Id.*
[13] *Id.*

or components should be recalled due to safety concerns. Thus, FCA has knowledge of all NHTSA complaints filed concerning the vehicles it manufactures, including the Class Vehicles. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000).

25.    Complaints submitted to FCA and NHTSA via Vehicle Owner Questionnaires ("VOQ") reveal multiple instances of Class Vehicles catching on fire, and provided the starting point for the NHTSA investigation.

26.    In March 2021, a fire began with occupants still in a 2021 Jeep Wrangler:

> NHTSA ID Number: 11403621
> Incident Date: March 16, 2021
> Consumer Location: RUMSON, NJ
> Vehicle Identification Number: 1C4HJXENXMW****
> Summary of Complaint: OUR 2021 JEEP STARTED SMOKING IN THE ENGINE AND WITHIN10 MINUTES BURST INTO FLAMES. THE ENTIRE FRONT END WAS DAMAGED BEYOND REPAIR / BURNED AND FIRE STATIONS HAD TO PUT OUT THE FIRE. MY DAUGHTER, DOGS AND I WERE ABLE TO MAKE IT OUT OF THE CAR BUT VERY SCARY.
> 1 Affected Product: 2021 Jeep Wrangler

27.    In September 2021, Defendant was noted to come along with a supplier to investigate the underhood fire in a 2021 Jeep Wrangler:

> NHTSA ID Number: 11436759
> Incident Date: September 27, 2021
> Consumer Location: BELLINGHAM, WA

Vehicle Identification Number: 1C4HJXCN3MW****
Summary of Complaint: The engine caught on fire after a short drive. The fire burned the entire top of the rear of the engine and completely through the wiring harness before I could extinguish it with a fire extinguisher and water. The fire appears to have started at the top rear of the engine where the fuel line enters the intake. The manufacturer, Stellantis, hired a special investigator from EAA/Bosch to look at it, and he agrees that it is similar to fires in similar engines that were recalled in October 2020, NHTSA Campaign number 21V-665. Stellantis has not responded to repeated requests for resolution.
1 Affected Product: 2021 Jeep Wrangler

28. In November 2021, an underhood fire began in a 2021 Jeep Wrangler with fewer than 2000 miles:

NHTSA ID Number: 11442560
Incident Date: November 13, 2021
Consumer Location: WICKENBURG, AZ
Vehicle Identification Number: 1C4HJXEG4MW****
Summary of Complaint: My 2021 Jeep Wrangler with 1900 miles caught on fire and was a total loss, preliminary investigation believes the cause of the fire to be a gas leak. There were no indications or warning lights, saw black smoke coming from the engine compartment by the time I pulled over and got out of the vehicle it was on fire and within minutes the entire car was engulfed by flames and it was a total loss.
1 Affected Product: 2021 Jeep Wrangler

29. In May 2023, a 2023 Jeep Wrangler in service for under four (4) months caught fire in a fast-food drive-thru:

NHTSA ID Number: 11525680
Incident Date: May 11, 2023

Consumer Location: Unknown

Vehicle Identification Number: 1C4JJXP61PW****
Summary of Complaint: I am not sure if this is
something that should be reported or not. My Jeep
caught on fire in a drive thru on 5/11/23. It was only 3.5
months old and had 3,465 miles on it. I saw only smoke
coming from under the hood, then big black billowing
smoke, when some guys got the hood open there were
flames coming from behind the engine. They were able
to put it out with a fire extinguisher but it caused alot
of damage. It is available for inspection but I would need
to know ASAP since it is at the dealer. About 3 minutes
prior I was on the highway and this could have ended up
so much worse as I had mytwo dogs with me as well. I
contacted Jeep and they sent Engineering Analysis
Associates/Bosch Automotive Service Solutions out to
examine the car and they said "the information at hand
would not permit us to associate the fire with a
manufacturing or assembly error". No reason for the fire
was given. Vehicle was inspected by insurance rep,
investigator hired by the manufacturer. Police and fire
dept were on scene at the time but did not create a report,
just gave me an incident #. No warnings, messages or
anything warned of the fire. I was able to drive it around
to the front of the building to get it away from the
building and other cars while their was smoke coming
out of it. No warnings lights came on at all that I could
see on the dash. I want to report this incase any other
Wrangler 4XE's end up having the same issue.
1 Affected Product: 2023 Jeep Wrangler

30.    In August 2023, Defendant was again noted to have come

to investigate an underhood fire in a 2022 Jeep Gladiator which was

turned off, and the engine cold:

NHTSA ID Number: 11585273
Incident Date August 6, 2023
Consumer Location NEW FRANKEN, WI

Vehicle Identification Number 1C6HJTFG9NL****
Summary of Complaint: My 2022 Jeep Gladiator burned
to the ground with 2,500 miles. Jeep sent out their fire
investigator and they said it was not a manufacture
defect on their part. Allstate sent out their fire
investigator and he said it WAS a Jeep manufacturer
issue. Both Jeep and Allstate denied to give me copies
of the report findings. My Jeep was parked and engine
cold when it started smoldering and went up in flames.
my VIN is [XXX] . I lost 12 months of payments plus
$1800 in Ceramic coating along with another
$2,000. in additional add ons.
INFORMATION REDACTED PURSUANT TO
THE FREEDOM OF INFORMATION ACT (FOIA), 5
U.S.C. 552(B)(6).
1 Affected Product: 2022 Jeep Gladiator

31.     In January 2024, a 2022 Jeep Gladiator caught fire despite being

off for about two weeks:

NHTSA ID Number: 11567979
Incident Date: January 24, 2024
Consumer Location: AUBURN,
WA
Vehicle Identification Number: 1C6JJTBG6NL****
Summary of Complaint: Our 2022 Gladiator has 1,758
miles on it and no modifications. It was last driven about
two weeks ago. It burned to the ground [XXX] while
parked next to our house. The fire started in the engine
compartment. There were no warnings of symptoms and
our jeep app showed everything was normal when last
driven. It was investigated by the VRFA and I am
waiting for their report. Insurance has not yet
inspected. We reported it to the dealership we bought it
from. On the [XXX] website, there is another 2022
Gladiator, also low mileage, that also burned to the
ground while parked. That person's insurance stated that
they believe it burned due to a manufacturer defect but
there are no recalls. INFORMATION REDACTED

PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).
1 Affected Product: 2022 Jeep Gladiator

32.   In January 2024, an underhood fire started in a 2021 Jeep

Wrangler shortly after it was turned off:

NHTSA ID Number: 11570607
Incident Date: January 6, 2024
Consumer Location: LAYTON, UT
Vehicle Identification Number: 1C4JJXFM2MW****
Summary of Complaint: Fire started about 15 minutes after parking the Jeep. Flames and smoke first appeared in engine compartment on passenger side where an electrical panel is located. Fire spread quickly and burnt out entire front of vehicle before the fire department was able to extinguish the flames. Vehicle is a total loss.
1 Affected Product: 2021 Jeep Wrangler

33.   In February 2024, an underhood fire started in a 2022 Jeep

Gladiator while a family was driving in a snowy highway:

NHTSA ID Number: 11573476
Incident Date February 19, 2024
Consumer Location FORESTVILLE, CA
Vehicle Identification Number 1C6JJTBM7NL****
Summary of Complaint: I was driving my Jeep Gladiator on [XXX] Shasta Co, CA, on a snowy mountain highway. I had my husband, two children and two dogs in the vehicle. Without warning the power steering went out. Within 20 seconds a steering wheel light appeared on the dash. Within approximately 20 more seconds, I was able to pull over into a plowed turnout. As soon as we stopped the vehicle we noticed a fire in the engine compartment. We were able to extinguish it within a few minutes with our fire extinguisher. The vehicle has approximately 15000

miles on it and is under warranty. It is currently under inspection to determine if it falls under warranty. INFORMATION REDACTED PURSUANT TO THE FREEDOM OF INFORMATION ACT (FOIA), 5 U.S.C. 552(B)(6).
 1 Affected Product: 2022 Jeep Gladiator

34.    Finally, in March 2024, NHTSA learned of an underhood fire in

a 2022 Jeep Wrangler:

> NHTSA ID Number: 11576144
> Incident Date: March 6, 2024
> Consumer Location: TITUSVILLE, NJ
> Vehicle Identification Number: 1C4HJXEM2NW****
> Summary of Complaint: The detective reported that the 2022 Jeep Wrangler spontaneously caught on fire. The contact stated that after the owner parked the vehicle, approximately six hours later a fire occurred which started in the engine compartment of the vehicle. The fire department was called to the scene and extinguished the flames. During the incident the vehicle was destroyed. No injuries were reported. A police and fire report was taken at the scene and the vehicle was later tow away. The cause of the failure was not yet determined. The manufacturer and local dealer were not notified by the contact. The contact was concern that the vehicle had experienced the same failure listed in the NHTSA Campaign Number: 23V787000(Electrical System) which did not include the diesel models. The contact indicated that the vehicle had experienced that same failure listed in the recall. The failure mileage was unknown.
> 1 Affected Product: 2022 Jeep Wrangler

35.    These complaints represent the nine incident reports that triggered

the NHTSA investigation.[14]  Since the last of these incidents, underhood fires have

continued to proliferate.  Some are as simple as "Vehicle exploded while parked in

the middle of the night catching fire causing major damages to the vehicle and total

loss." (NHTSA ID Number: 11592754).  While others chronicle a more devastating

tale.

36.     For example: In April 2024, an owner reported smoke and flames

hours after a Class Vehicle with only 1000 miles was turned off:

> NHTSA ID Number: 11613951
> Incident Date April 24, 2024
> Consumer Location MISSOULA, MT
> Vehicle Identification Number 1C6JJTBG7PL****
> Summary of Complaint: The contact owns a 2023 Jeep
> Gladiator. The contact stated that after parking the
> vehicle and turning the engine off, approximately two
> hours later the contact discovered smoke and flames
> coming from the engine compartment of the vehicle.
> The fire department was called to the scene and
> extinguished the flames. During the fire, the garage was
> destroyed and the exterior of the home was partially
> damaged. A fire report was taken at the scene and the
> vehicle was later towed away. The fire department and
> insurance investigator concluded that the fire had
> originated in the engine compartment of the vehicle. The
> exact cause of the fire was not determined. The
> manufacturer was notified of the fire. The local dealer
> was not contacted. The failure mileage was 1000.
> 1 Affected Product: 2023 Jeep Gladiator

---

[14]   Opening Resume ODI Report Identification Numbers – Investigation PE24024,
https://static.nhtsa.gov/odi/inv/2024/INOV-PE24024-19582.pdf (last visited December 12,
2024).

37. In July 2024 an owner whose vehicle was parked in their driveway for less than a day caught fire, was totaled and caused over $60,000 in damage to their home:

> NHTSA ID Number: 11617119
> Incident Date July 5, 2024
> Consumer Location Unknown
> Vehicle Identification Number 1C6JJTBG4NL****
> Summary of Complaint: In the early afternoon hours of July 5, 2024, our 2022 jeep gladiator rubicon with only 18,000 miles spontaneously combusted in our driveway after being parked there for just under 24 hours. While working in the yard, my husband noticed thick black smoke coming from the engine. The smoke quickly turned into flames then rapidly intensified as it spread throughout the engine, cabin and then ultimately the entire jeep. The jeep was a total and complete loss with Jeep claiming no responsibility whatsoever. We have over $60,000 in damages to our home, driveway, landscaping and soil (PFAS) from the fire, NOT including the jeep itself. Note *The engine light did go on about a month prior to the fire, which from what we were told by Jeep service dept, was due to multiple misfires. This issue was resolved immediately. After the fire, the jeep was inspected by our insurance company and also by Jeep. Because the fire was so intense and quickly spread, there wasn't anything left. Jeep never returned our calls and never once tried to make things right! Our safety was at risk for obvious reasons. The Jeep spontaneously started on fire due to no fault of our own. Had we not have been home, or had the Jeep been parked in our garage, facing the garage or the fire started at night while we were sleeping, the outcome would have been quite different. The damage it DID do to our property along with the mental anxiety and stress of trying to pay for repairs is significant enough without actually having our house burn down to the ground. This is unacceptable! Jeep needs to take responsibility!

1 Affected Product: 2022 Jeep Gladiator

38.     In August 2024, an owner whose vehicle caught fire was totaled and

caused severe damage to the garage and driveway:

> NHTSA ID Number: 11606581
> Incident Date August 3, 2024
> Consumer Location Unknown
> Vehicle Identification Number 1C4JJXR67MW****
> Summary of Complaint: My vehicle caught fire while
> parked in my driveway and burned to the ground
> resulting in a totaled vehicle, damaged garage, and
> damaged concrete and driveway
> 1 Affected Product: 2021 Jeep Wrangler

39.     In September 2024, FCA sent an investigator to assess Class

Vehicle which caught fire while it was off who admitted to the owner that the

fire was "due to a faulty component":

> NHTSA ID Number: 11613732
> Incident Date September 10, 2024
> Consumer Location BOWLING GREEN, KY
> Vehicle Identification Number 1C4JJXFM7NW****
> Summary of Complaint: The contact owned a 2022 Jeep
> Wrangler. The contact stated while the vehicle was
> parked unoccupied and turned off, there was smoke
> coming from the vehicle. The contact stated the fuse box
> located on the passenger side of the vehicle had caught
> on fire. The fire was extinguished by the Fire
> Department. A fire report was filed, and a fire report
> number was provided. The contact was informed that the
> cause of the fire was that the fuse box failed. A police
> report was not filed. There were no injuries sustained.
> The dealer was not contacted. The vehicle was not
> diagnosed or repaired. The insurance company sent a
> fire investigator to determine the failure. The
> manufacturer also sent an investigator and confirmed

that the failure was due to a faulty component in the vehicle but no further information was provided. The vehicle was destroyed. The manufacturer was not made aware of the failure. The failure mileage was approximately 10,000.

1 Affected Product: 2022 Jeep Wrangler

40.     In October 2024, a vehicle with under 10,000 miles caught fire after sitting for over five (5) days:

> NHTSA ID Number: 11621193
> Incident Date October 21, 2024
> Consumer Location SAN FRANCISCO, CA
> Vehicle Identification Number 1C4JJXSJ6NW****
> Summary of Complaint: The contact owns a 2022 Jeep Wrangler. The contact stated that the vehicle was parked outside the residence for 5 days when a neighbor called to make him aware the vehicle was on fire. The contact was not at the residence at the time of the fire however 911 was called to arrive at the residence. Upon arrival at his residence, the fire department was present and had extinguished the fire. The fire department stated that the fire was not arson-related and the origin was electrical. A fire report was filed. The vehicle remained at the residence at the contact possession. The sidewalk and the street were damaged due to the fire. No injuries were reported. A dealer was not contacted. The vehicle was not diagnosed or repaired. The manufacturer was not made aware of the failure. The failure mileage was 10,000.
> 1 Affected Product: 2022 Jeep Wrangler

41.     Despite these mounting complaints, and FCA's knowledge of the serious risk of fire in the Class Vehicles, FCA has done nothing to remedy the problem or even warn consumers.

## VI. TOLLING OF THE STATUTE OF LIMITATIONS

### A. Discovery Rule Tolling

42. Class members had no way of knowing about the unreasonable fire risk of the Class Vehicles because Defendant concealed (and continues to conceal) the existence of the Underhood Fire Defect.

43. Plaintiffs and class members could not have discovered through the exercise of reasonable diligence the existence of the Underhood Fire Defect.

44. No publicly and reasonably available facts that would have caused a reasonable person to suspect that Defendant was concealing the Underhood Fire Defect or the existence of the Defect itself. Rather, Plaintiffs learned of the Defect only after NHTSA launched its investigation, which was publicized by several news outlets.

45. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims as to the Class Vehicles.

### B. Estoppel

46. Defendant was under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the Class Vehicles and the existence of the Underhood Fire Defect.

47. FCA knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the Class Vehicles and the

existence of the Underhood Fire Defect.

48.     Based on the foregoing, Defendant is estopped from relying on any defense based on any statutes of limitations.

## VII.   CLASS ALLEGATIONS

49.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and subclasses:

> **Nationwide Class**: All persons or entities who purchased or leased one or more model year 2021–2023 Jeep Gladiator and Wrangler vehicles (the "Class Vehicles").

> **State Subclasses**: All persons or entities who purchased or leased one or more of the Class Vehicles in the States of Pennsylvania, Ohio, and Michigan.

50.     Excluded from the membership in any proposed class are Defendant and its subsidiaries and affiliates; all persons who make a timely election to be excluded from this action; governmental entities; the Judge to whom this case is assigned and his/her immediate family; and Plaintiffs' Counsel.  Also excluded from those action are any claims for personal injury or property damages claims resulting from the fires or explosions caused by the Class Vehicles.

51.     Class treatment of Plaintiffs' claims is appropriate because Plaintiffs will use the same evidence to prove the elements of their individual claims as they

will the claims of each class member.

52. **Numerosity**. The members of each Class and Subclass are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. There are more than 781,000 Class Vehicles and their attendant owners and lessees who are readily identifiable.

53. **Commonality and Predominance**: This action involves common questions of law and fact, which predominate over any questions unique to any particular class member or class members, including, without limitation:

- Whether Defendant engaged in the conduct alleged herein;

- Whether the Underhood Fire Risk creates an unreasonable risk of fires in the Class Vehicles;

- When Defendant should have first known about the Underhood Fire Defect;

- Whether Defendant designed, manufactured, marketed, and distributed the Class Vehicles with the Underhood Fire Defect;

    f.  Whether Defendant breached its warranties to Plaintiffs and class members;

    h.  Whether Defendant has been unjustly enriched at the expense of Plaintiffs and the class members;

    i.  Whether Plaintiffs and the other class members overpaid for their vehicles at the point of sale; and

    j.  Whether Plaintiffs and the other class members are entitled to damages and other monetary relief and, the measure of such damages.

54. **Typicality**: Plaintiffs' claims are typical of the other Class and Subclass

members' claims because, among other things, they were injured in the same manner by the same defect and the same course of conduct by Defendant.

55. **Adequacy**: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the other class members they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs will prosecute their claims in this action vigorously on behalf of themselves and all others they seek to represent.

56. **Superiority**: A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for the members of the Class and Subclasses to individually seek redress for Defendant's wrongful conduct. Even if individual litigation were practical, the court system would be unduly and unreasonably burdened by such individualized litigation which would also risk inconsistent or contradictory judgments and increases the delay and expense to all parties.

## VIII.   CLAIMS FOR RELIEF

### COUNT I

**VIOLATION OF THE MAGNUSON-MOSS WARRANTY
ACT (15 U.S.C. § 2301, *et seq.*)
(Alleged by all Plaintiffs on behalf of the Nationwide
Class or, in the alternative, the State Subclasses)**

57.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

58.     This Court has jurisdiction to decide claims brought under 15 U.S.C. § 2301 by virtue of 28 U.S.C. § 1332(a)–(d).

59.     The Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3). Plaintiffs and class members are consumers because they are persons entitled under applicable state law to enforce implied warranties against the warrantor.

60.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

61.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with an implied warranty.

62.     Defendant owed Plaintiffs and class members an implied warranty of merchantability in connection with the purchase or lease of their vehicles that is an "implied warranty" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7). As a part of the implied warranty of merchantability, Defendant

warranted that the Class Vehicles engines were fit for their ordinary purpose as safe vehicles and would pass without objection in the trade as designed, manufactured, and marketed.

63.     Defendant breached its implied warranties, as alleged further below, and is liable to Plaintiffs pursuant to 15 U.S.C. § 2310(d)(1). The Underhood Fire Defect creates the risk without warning and at any time, even when the vehicle is turned off and parked, of spontaneously catching fire, causing an unreasonable risk of death, serious bodily harm and/or property damage to lessees and owners of the Class Vehicles as well as their homes, passengers, and bystanders. This defect rendered the Class Vehicles, when sold/leased and at all times thereafter, unmerchantable and unfit for their ordinary use.

64.     As alleged herein, Defendant knew or should have known of the defect.

65.     Any effort by Defendant to limit the implied warranties in a manner that would exclude coverage of the Class Vehicles is unconscionable.

66.     Any limitations Defendant might seek to impose on its warranties are procedurally unconscionable. There was unequal bargaining power between Defendant and Plaintiffs, as, at the time of purchase and lease, and all warranties were offered by Defendant on a "take it or leave it" basis.

67.     Any limitations Defendant might seek to impose on its warranties are

substantively unconscionable. Defendant knew that the Class Vehicles were defective and that the Class Vehicles could spontaneously ignite when used as intended long before Plaintiffs and the class members, but concealed this fact.

68.     Plaintiffs are in privity with Defendant given the nature of their relationship.  To the extent privity is deemed to be not established, Plaintiffs are intended third-party beneficiaries of contracts between Defendant and its dealers, and specifically, of Defendant's implied warranties because the dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles for the intended benefit of consumers, like Plaintiffs. Finally, privity is also not required because the Class Vehicles are dangerous instrumentalities due to the Underhood Fire Defect.

69.     Pursuant to 15 U.S.C. § 2310(e), Plaintiffs are entitled to bring their claims as a class action and are not required to give Defendant notice and an opportunity to cure until such time as the Court determines whether Plaintiffs are adequate class representatives.

70.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit. Plaintiffs, individually and on behalf of all other class members, seek all damages permitted by law, including diminution in value of their

vehicles, in an amount to be proven at trial. In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have reasonably been incurred by Plaintiffs and the Nationwide Class members in connection with the commencement and prosecution of this action.

## COUNT II

### BREACH OF IMPLIED WARRANTY
**(Alleged by all Plaintiffs on behalf of the State Subclasses)**

71.     Plaintiffs re-allege and incorporate by reference all paragraphs as though fully set forth herein.

72.     FCA is a "merchant" within the meaning of §2-104 of Uniform Commercial Code (U.C.C.) as adopted by the relevant states and "seller" of motor vehicles within the meaning of U.C.C. § 2-103

73.     The Class Vehicles are "goods" under U.C.C. § 2-103. Under U.C.C. § 2-314, an implied warranty of merchantability attaches to the Fire Risk Vehicles.

74.     The Class Vehicles were not merchantable when sold or leased because they pose an unreasonable risk of underhood fire due to the Underhood Fire Defect, which makes the vehicles susceptible to a risk of spontaneous combustion, causing an unreasonable risk of death, serious bodily harm and/or

property damage to lessees and owners of the Class Vehicles as well as their homes, passengers and bystanders. This defect renders the Class Vehicles at all times unmerchantable and unfit for their ordinary use of driving.

75.     Defendant breached the implied warranty of merchantability by selling Class Vehicles with the Underhood Fire Risk.

76.     Plaintiff and the members of the State Subclasses were and are third-party beneficiaries of FCA's contracts with FCA-certified/authorized retailers who sold or leased the Class Vehicles.

77.     Defendant was put on adequate notice of its breach of warranty within a reasonable time by the fact of the NHTSA investigation, by customer complaints and by the initiation of this and other legal proceedings against Defendant based on the Underhood Fire Defect.

78.     Despite notice, Defendant has failed to remedy the Underhood Fire Defect.

79.     Plaintiff and the members of the State Subclasses seek all damages and relief to which they are entitled.

## COUNT III

### UNJUST ENRICHMENT
**(Alleged by all Plaintiffs on behalf of the State Subclasses)**

80.     Plaintiffs re-allege and incorporate by reference all paragraphs as

though fully set forth herein.

81.     FCA benefitted at the expense of Plaintiffs and members of the State Subclasses by selling, leasing, and distributing the Class Vehicles as safe and, as a result, charged worth for more than they were worth, which sum Plaintiffs and the subclass members paid.

82.     Plaintiffs and members of the State Subclasses also incurred additional costs they had not contemplated (but were foreseeable by FCA) as a result of the Underhood Fire Defect, which costs should have been borne by FCA.

83.     Plaintiffs and the members of the State Subclasses were unaware of the Underhood Fire Risk when they purchased or leased their Class Vehicles.

84.     It is inequitable for FCA to retain these benefits of its unjust conduct, which benefits it knowingly accepted.

85.     As a result of FCA's conduct, the amount of its unjust enrichment should be determined in an amount to be determined at trial.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class and Subclasses, respectfully request that the Court enter judgment in their favor and against FCA, as follows:

A.     Certification of the proposed Class and Subclasses, including appointment of Plaintiffs as Class Representatives, and of Plaintiffs' counsel

as Class Counsel;

      B.      A repair for the Underhood Fire Defect and restitution, including at the election of class members, recovery of the purchase price of their Class Vehicles, or the overpayment for their vehicles;

      C.      Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

      D.      An order requiring FCA to pay both pre- and post-judgment interest on any amounts awarded;

      E.      An award of costs and attorneys' fees; and

      F.      Such other or further relief as may be appropriate.

## IX.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

DATED: March 7, 2025

               Respectfully submitted,

               /s/ Melanie S. Bailey
               Melanie S. Bailey (OH 0075821)
               Burg Simpson Eldredge Hersh & Jardine, P.C.
               201 E. Fifth St., Suite 1340
               Cincinnati, OH 45202
               513-852-5600

513-852-5611 (fax)
mbailey@burgsimpson.com


Chris A. Seeger
Scott A. George
SEEGER WEISS LLP
55 Challenger Rd
Suite 600
Ridgefield Park, NJ 05667
Tel: 973-639-9100
cseeger@seegerweiss.com
sgeorge@seegerweiss.com